UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTOINETTE CAMBRIA,

                          Plaintiff,

         *- against -*

COSTCO WHOLESALE CORPORATION,

                          Defendant.

DECISION AND ORDER

18cv8255 (LMS)

---

**LISA MARGARET SMITH, U.S.M.J.** [1]

       Plaintiff Antoinette Cambria ("Plaintiff") commenced this action asserting a claim of negligence by filing a complaint dated July 16, 2018, in New York State Supreme Court, County of Rockland. Notice of Removal, ECF No. 1. Defendants removed the matter to the Southern District of New York on September 11, 2018, and filed an answer on September 14, 2018. ECF No. 1; Answer, ECF No. 4. Currently before the Court is Defendant's motion for summary judgment. Mot. Summ. J., ECF No. 27. For the following reasons, the motion is **DENIED**.

**I.    BACKGROUND**

       "The following facts are either undisputed or described in the light most favorable to the Plaintiff, the non-moving party." [2] Castro v. Target Corp., No. 14 Civ. 526 (WFK) (LB), 2015 WL 1476863, *1 (E.D.N.Y. Mar. 31, 2015) (citing Capobianco v. City of New York, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Plaintiff alleges that she was injured as the result of a fall outside the Costco Wholesale warehouse located at 50 Overlook Boulevard in Nanuet, New York. Pl. Rule

---

[1] The parties have consented to the undersigned's exercise of jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). Consent Order, ECF No. 12.
[2] Unless otherwise stated, the undisputed facts were taken from Plaintiff's Rule 56.1 Statement (Plaintiff's counter to Defendant's Rule 56.1 Statement), ECF No. 35.

56.1 Statement ¶ 2, 10. On the afternoon of November 29, 2017, Plaintiff arrived at the Nanuet Costco with her husband, Frank Cambria. Id. at ¶ 3. After completing their shopping, Plaintiff and her husband exited the Costco. Id. at ¶ 4. When she exited the store, Plaintiff made a right turn toward the parking lot. Def. Ex. F at 31:23-32: 4. [3] She walked toward the curb and the building entrance was behind her. Def. Ex. F at 22:17-23:4; 31:16-22. Frank Cambria left Plaintiff at the front of the store while he went to bring the car around. Pl. Rule 56.1 Statement at ¶ 5. From this point until her fall, Plaintiff was standing facing the parking lot with her hands on the shopping cart's handle. Id. at ¶ 6. Plaintiff testified at her deposition that she was outside the entrance/exit of Costco waiting at the curb. Def. Ex. F at 18:5-13; 26:4; 71:23-24. The parking lot wraps around from the front to the right side of the Costco such that the curb is curved in some areas. See Photo shown at Plaintiff's deposition as Defendant's Exhibit C ("Photo").[4] To Plaintiff's right was a shopping cart storage area. Def. Ex. F. at 32:5-13. While waiting for her husband, Plaintiff felt gusts of wind. Pl. Rule 56.1 Statement at ¶ 8. The wind speeds that day were between 16 and 25 miles per hour, with gusts between 24 and 30 miles per hour at the approximate time of the accident. [5] Id. at ¶ 9; see also Def. Ex. M.

The parties dispute how Plaintiff was caused to fall.[6] Plaintiff testified that she noticed three Costco employees outside the store before the accident. Def. Ex. F at 23:22-25:6. She

---

[3] All references to Defendant's exhibits are to the exhibits Defendant attached to its Affirmation in Support, ECF Nos. 28-30.
[4] Plaintiff stated that she was standing in the approximate location facing the same direction as the man in black standing to the left in the photo shown to Plaintiff at her deposition as Defendant's Exhibit C. Def. Ex. F at 53:8-23, 55:10-25; see Photo.
[5] The Court takes judicial notice of the climatological data Defendant presents in its Exhibit M. See Fed. R. Evidence 201; Federal Election Comm'n v. Hall-Tyner Election Campaign Committee, 524 F. Supp. 955, 959 n.7 (S.D.N.Y. 1981) ("[A]ny facts subject to judicial notice may be properly considered in a motion for summary judgment.").
[6] The following facts are taken from the transcript of Plaintiff's deposition which is attached to Defendant's Affirmation in Support (ECF Nos. 29-30) as Exhibit F, unless otherwise noted.

2

identified the employees as younger men in their twenties wearing orange vests and name tags. Id. at 24:7-25:18. A couple of seconds before the accident, Plaintiff saw one of the employees to her right pushing six or seven carts. Id. at 28:6-14, 28:24-29:6. The carts were stacked one inside of the other. Id. at 67:24-68:4. Plaintiff observed that the employee was having difficulty controlling his carts. Id. 27:24-25; 68:4-25 ("He was having trouble controlling them . . . [The carts] were going from side to side."). She thought the employee was bringing the carts to the storage area, which was to her right.[7] Id. at 69:8-13; 32:5-13. Plaintiff was close to the cart storage area but not close enough to be able to touch the carts. Id. at 31: 2-4; Def. Ex. F-1 at 5:18-6:4. Before the impact, Plaintiff saw the employee in front of her, coming at her head-on. Id. at 70:15-25; 72:7-9; 74: 16-75:3; 36:11, 37:2. She could not estimate how far away the employee was when she saw him, but she stated that he was not close enough for her to touch his cart. Id. at 65:17-66:11. The employee would have needed to turn left in order to bring his carts to the storage area. Id. at 70:8-11. Plaintiff observed the employee going to his left but did not see him turn his carts to his left. Id. at 72:7-16; 71:2-5. It appeared to Plaintiff that the employee might hit her, so she took approximately two steps to the right, closer to the parked carts, while keeping her hands on the cart's handle. Id. at 76:11-21; 78:10-14. Plaintiff did not move her cart while she did this, id. at 76:15-16; 78:19-22, and continued to face the same direction as she had before she stepped to the right.[8] Id. at 78:4-9.

---

[7] Plaintiff stated that the employee would need to come around from the left side of the photo shown as Defendant's Exhibit C to insert the carts into the storage area. Id. at 69:21-70:7.
[8] The parties agree that "Plaintiff stood behind the shopping cart facing the parking lot with both hands on the handle until her accident." Pl. Rule 56.1 Statement, ¶ 6; Def. Rule 56.1 Statement, ¶ 6; see also, Pl. Rule 56.1 Statement at ¶ 16; Def. Rule 56.1 Statement.

Plaintiff was standing still with her hands on the handle of her cart when she felt a jolt.[9] Id. 25:19-22; 32: 14-33:25; 77:22-78:3; 71:25-72:3. The jolt pushed Plaintiff's cart forward and to the right. Id. 75:18-21; Def. Ex. F-1 at 6:9-15. As a result, Plaintiff fell to her left, hitting the ground with her outstretched left hand and her left thigh. Def. Ex. F. at 33:5-7, 22-25; 34:2-35:11; 45:19-25. Before falling, Plaintiff felt a bang, which she further described as a jolt, from the impact of her cart being hit; she felt the impact come from the handle of her cart. Id. 71:6-14; 65:12-16. Plaintiff did not see the employee's cart contact her cart. Id. at 32: 21-24. She believed that the side of employee's cart contacted the handle of her cart, id. at 29:7-10; 20:22-30:2. 71:6-14, passing on the right side of her body. Id. at 82:24-83:6. Plaintiff never saw the front of the employee's cart pass the front of her cart. Id. at 82:17-23. Plaintiff testified that the Costco employee hit her cart and knocked her down, id. at 27:4-7; 33:24-25. She denied being unsteady on her feet due to gusting wind, and denied that she lost her grip on the cart due to the wind. Id. at 27: 11-24. Plaintiff did testify that she thought the wind pushed the employee which caused him to make contact with her cart. Id. at 73:3-6; 74:7-12. As a result of the fall, Plaintiff felt pain in her arm, id. at 39:12-21, and her shoulder. Def. Ex. F-1 at 8:4-20.

Plaintiff did not see where the employee went after the accident.[10] Id. 83:10-12, 18; Pl. Rule 56.1 Statement at ¶ 19. Frank Cambria and Theresa Galgano, a non-party witness, came to Plaintiff after her accident. Id. 41:2-25; Def. Ex F-1 at 9:6:15; Def. Ex. H at 27:17-21; Def. Ex. L. According to Plaintiff, there were some employees outside Costco after her accident, but they were not the same employees she saw before the accident. See Def. Ex. F at 42:9-43:10. Neither

---

[9] The parties agree that "Plaintiff felt what she described as a 'jolt' which pushed her shopping cart forward and caused her to fall to the ground." Pl. Rule 56.1 Statement, ¶ 10; Def. Rule 56.1 Statement, ¶ 10.

[10] Plaintiff also stated that she did not know if she saw the employee again because she did not know what he looked like. Def. Ex. F at 83: 19-25.

Frank Cambria nor Ms. Galgano saw anyone who appeared to be a Costco employee outside the store after the accident. Def. Ex. H at 31:20-32:3; see Def. Ex. L at ¶ 8. Frank Cambria noticed six or seven carts still in contact with Plaintiff's cart after the accident. Pl. Affirmation, Ex. A, ECF No. 34.

After the accident, Plaintiff was assessed by emergency medical technicians ("EMT") and taken to the hospital. See Def. Ex. F-1 at 13:18-20, 17:3-4; Pl. Rule 56.1 Statement ¶ 28. Kerven Floreal, an EMT with the Nanuet Community Ambulance Corps, was one of the technicians who assessed Plaintiff.[11] Def. Ex. J. According to the Prehospital Care Report Summary attached to Mr. Floreal's affidavit, Plaintiff stated that "she was walking to her car when the wind pushed her and caused her to fall." Id. Dr. Jennifer Galjour was an emergency medicine physician working at Mount Sinai Hospital on November 29, 2017.[12] Def. Ex. K. According to the Archived ED Medical Chart attached to Dr. Galjour's affidavit, Dr. Galjour saw Plaintiff at Nyack Hospital and recorded that "pt was at Costco and the wind blew the cart and she fell," and that "[Plaintiff] states that she was pushing a cart when the wind caused her to fall over onto her left shoulder [in the Costco parking lot]." Id. Plaintiff denied telling her treating professionals that the wind caused her to fall, but she subsequently admitted that it was possible

---

[11] Mr. Floreal avers in his affidavit that he does not have an independent recollection of responding to Plaintiff's accident but that the name and signature on the Prehospital Care Report Summary indicates that Mr. Floreal responded to the scene and prepared the report. Def. Ex. J at ¶ 3. Mr. Floreal further avers that he is trained to accurately record all statements made at the scene which relate to the cause, circumstance, or mechanism of a trauma-related injury and has no reason to believe the statement contained in the summary is inaccurate. Id. at ¶¶ 5-6.
[12] Dr. Galjour avers in her affidavit that she does not have an independent recollection of examining Plaintiff after her accident but that the name and digital signature on the chart attached to the affidavit indicates that Dr. Galjour did examine Plaintiff. Def. Ex. K at ¶¶ 1-3. Dr. Galjour further avers that she is trained to accurately record statements made during examinations which relate to the cause, circumstance, or mechanism of a trauma-induced injury and has no reason to believe the statement contained in the chart is inaccurate. Id. at ¶¶ 5-6.

that she had said this. Def. Ex. F at 57: 4-62: 25; Def. Ex. F-1 at 13:18-14: 10; but see Def. Ex. F-1 at 21:15-18.

As a preliminary matter, the Court must address Plaintiff's contention that the affidavits of Robert Dempsey (Def. Ex. I), Kerven Floreal (Def. Ex. J), Dr. Jennifer Galjour (Def. Ex. K), and Theresa Galgano (Def. Ex. L) are deficient and cannot be considered. See Pl. Affirmation, ECF No. 34 ¶ 6. In a diversity action, federal law governs on matters of procedure. See Hanna v. Plumer, 380 U.S. 460, 471-73 (1965). The requirements for an affidavit to be acceptable before the court is procedural, and no federal or local rule requires that affidavits include the city where it was sworn and a certificate of conformity for those affidavits sworn to in a state other than New York. Plaintiff's citation to the New York C.P.L.R. is inapposite.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" for purposes of summary judgment if it "might affect the outcome of the suit under the governing law[; f]actual disputes that are irrelevant or

unnecessary will not be counted." Id. at 248 (citation omitted). "The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See id.

The movant bears the initial burden of "demonstrating the absence of a genuine issue of material fact," Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (citing Celotex, 477 U.S. at 323-24), and that he or she "is entitled to judgment as a matter of law." See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 455 (2d Cir. 2007) (internal quotation marks and citation omitted). If satisfied, the burden then shifts to the non-movant to present evidence establishing "that there is a genuine issue of material fact." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Moreover, a non-movant may not defeat a motion for summary judgment on the basis of "conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted); Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). Instead, the non-movant must establish the existence of an issue of fact by showing that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249-250 (citation omitted).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d

91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). Therefore, "the court is required to resolve all ambiguities. . . in favor of the party against whom summary judgment is sought," Holcomb, 521 F.3d at 137, and "[t]he nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (citations omitted). Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden, 957 F.2d at 975 (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Local Civ. R. 56.1(b). In the context of a motion for summary judgment, Fed. R. Civ. P. 56(c)(1) provides that a party may support his or her version of the material facts by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

While a "court need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60,

65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). If the party opposing summary judgment does not respond to the motion, the court may "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied <u>even if no opposing evidentiary matter is presented.</u>

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

**B.      Applicable Law and Analysis**

"In this diversity suit, New York law provides the applicable standards for negligence." Olejniczak v. E.I. Du Pont De Nemours & Co., 998 F. Supp. 274, 277 (W.D.N.Y. 1998) (quoting Weeks v. ARA Services, 869 F. Supp. 194, 195 (S.D.N.Y. 1994). "The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.' " Pasternack v. Laboratory Corp. of America Holdings, 807 F.3d 14, 19 (2d Cir. 2015) (quoting Lombard v. Booz-Allen Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (citation omitted)). In its motion for summary judgment, Defendant challenges Plaintiff's ability to establish the third element—causation.[13] Defendant

---

[13] Defendant frames its motion as a challenge to proximate cause; however, the dispute seems to lie in whether a Costco employee was the actual cause of Plaintiff's fall rather than the proximate, or legal, cause. Def. Memo, ECF No. 32 at 8 ("[I]t is clear that the actual explanation for plaintiff's fall is that a gust of wind caused her to lose balance."); cf. Aegis Ins. Serv., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 178-79 (2d Cir. 2013) ("The trend in New York cases is

rests its argument almost exclusively on a state law rule which states that where a plaintiff is unable to identify the cause of his or her fall in a negligence action, the defendant is entitled to judgment as a matter of law. Def. Mem. at 5, ECF No. 32; Padilla v. CVS Pharmacy, 175 A.D.3d 584, 585 (2d Dep't 2019) ("A plaintiff's inability to identify the cause of his or her fall is fatal to a cause of action to recover damages for personal injuries because a finding that the defendant's negligence, if any, proximately cause the plaintiff's injuries would be based on speculation.") (quoting Vojvodic v. City of New York, 148 A.D.3d 1086, 1087 (2d Dep't 2017)) (internal citations omitted).

Defendant contends that Plaintiff is unable to identify the cause of her fall without resorting to speculation, and, therefore, that Defendant is entitled to judgment as a matter of law. Def. Mem. at 5. In support of its contention, Defendant argues that (1) Plaintiff's description of how the accident occurred "defies the laws of physics," (2) Plaintiff never saw the employee's shopping cart come into contact with her cart, (3) there is no circumstantial evidence supporting Plaintiff's version of events, and (4) Plaintiff's identification of the person in the parking as a Costco employee is vague, conclusory, and lacking specificity. Id. at 5-8. In Defendant's view, the evidence before the Court points to a non-negligent explanation for Plaintiff's fall, that "a gust of wind caused her to lose her balance," rather than a Costco employee's collision with her cart. Id. at 7-8. Defendant, as the moving party, has the initial burden to show that there is no genuine issue of material fact on this issue and that it is entitled to judgment as a matter of law;

---

to focus analysis more on 'substantial factor' or proximate cause analysis and less on cause-in-fact analysis."). Defendant does not explicitly challenge the duty or breach elements, nor does it include any argument that the alleged employee's conduct was reasonable under the circumstances or that contact with Plaintiff's cart was sufficiently unforeseeable. For that reason, the Court will not address these issues.

10

the burden does not shift to Plaintiff until Defendant has succeeded in this task. For that reason, the Court will not address the adequacy of Plaintiff's submission unless and until it has determined that Defendant has met its burden.

### 1. Plaintiff Sufficiently Identified the Cause of Her Fall

By contrast with the evidence offered in most of the cases cited by Defendant in support of its argument, Plaintiff in this case clearly stated what she concluded to be the cause of her fall. Plaintiff testified numerous times during her depositions that she saw a Costco employee coming toward her pushing several carts seconds before the accident. Def. Ex. F at 28:2-29:6. Plaintiff testified that she believed the person she saw was a Costco employee because he was wearing a vest and name tag. Id. 24:7-10. Defendant's contention that Plaintiff's identification is lacking because she was unable to identify the person with more specificity is unavailing. Plaintiff's statements that she saw a young man in a colored vest, with a name tag, pushing several carts in the Costco parking lot, is enough evidence from which a juror could reasonably conclude that the person Plaintiff saw just before the collision was a Costco employee.[14] Plaintiff testified that she did not see the employee's cart make contact with hers, although she also testified at one point in the deposition that she had, Def. Ex. F at 48:6, but she consistently stated that she felt a jolt coming from her shopping cart which caused her to fall to the ground within seconds of seeing

---

[14] Defendant argues, among other things, that the color of the employee's vest testified to by Plaintiff "is a color not worn by Costco employees." Def. Mem. at 5, ECF No. 32 (emphasis added). The testimony identified in support of this assertion is not so definitive. Rather, the Costco representative testified that the reflective vests worn by Costco cart crew employees "[u]sually [were] like that bright neon yellow or green." Def. Ex. H. at 9: 21-24. When asked if she had ever seen those employees wearing neon orange, she responded "Not that I recall." Id. at 9:25-10:3. Moreover, when she was asked if the cart crew employees wore any attire which specifically identified them as a Costco employee, such as with a logo, she responded, "No, because the reflective vest is very general. It's not made just for Costco. I think we just get them from a random company and we just hand them out." Id. at 10:7-16. This testimony, taken in its entirety, does not support Defendant's argument about the color of the vest identified by Plaintiff.

the employee having difficulty controlling a group of carts and coming toward her. See e.g., id. at 32:21-33:25; 65:7-11. Frank Cambria stated that, when he reached Plaintiff after her accident, he saw six or seven carts held together by a strap in contact with Plaintiff's cart. Pl. Affirmation, Ex. A, ECF No. 34.[15] Plaintiff stated several times that the Costco employee caused her to fall. See e.g., Def. Ex. F. 27:2-8, 33:18-25. Furthermore, Plaintiff unequivocally denied that the wind caused her fall. See Def. Ex. F. at 64:11-21, 37:16-24.

The law does not require Plaintiff to have witnessed the contact to be able to offer evidence sufficient to survive summary judgment. See Moiseyeva v. New York City Housing Authority, 175 A.D.3d 1527, *2 (2d Dep't 2019) ("That does not mean that a plaintiff must have personal knowledge of the cause of his or her fall . . . [i]t only means that a plaintiff's inability to establish the cause of his or her fall—whether by personal knowledge or by other admissible proof—is fatal to a cause of action based on negligence.") (internal citations omitted); see also Nussbaum v. Metro-North Commuter R.R., 994 F.Supp.2d 483, 491 (S.D.N.Y. 2014) ("Plaintiff need not show direct evidence in support of each element, but instead, '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.' ") (quoting Kramer v. Showa Denko K.K., 929 F. Supp. 733, 747 (S.D.N.Y. 1996)) (internal quotation marks omitted). Plaintiff's testimony of what she saw (a Costco employee coming toward her while pushing six

---

[15] Defendant asserts that Frank Cambria's affidavit is a sham affidavit. Def. Reply Mem., ECF No. 37 at 2. The sham affidavit doctrine is inapplicable here because the affidavit was not prepared in opposition to Defendant's motion and did not contradict Frank Cambria's deposition testimony. See Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 205-206 (2d Cir. 2014); Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619-20 (2d Cir. 1996). The affidavit is dated March 12, 2019, the same date as his deposition, and the motion was filed September 20, 2019. Mr. Cambria was never asked in his deposition what objects, if any, he saw when he reached his wife after her fall.

or seven carts which were moving from side to side) and felt (a jolt), the short time period between seeing the employee's cart and feeling the jolt that knocked her down, and Frank Cambria's statement that he saw six or seven carts still in contact with her cart immediately after the accident, establishes sufficient circumstantial evidence from which a jury may infer that a Costco employee caused Plaintiff's fall. See Diaz v. Calabrese, No. 13 Civ. 1531 (ARR)(MG), 2014 WL 6883517, *11-12 (E.D.N.Y. Dec. 4, 2014) ("Here, plaintiffs have alleged that as Ms. Diaz stepped onto the lower deck, she sensed that it was not flat, lost her balance, heard a snap, and felt pain . . . Even if the precise location or nature of the defect is not certain, plaintiffs have adduced evidence of a tangible, identifiable, and non-speculative potential cause of Ms. Diaz's injury."); Di Franco v. Golub Corp., 241 A.D.2d 901, 901-902 (3d Dep't 1997). "Resolv[ing] all ambiguities and draw[ing] all permissible factual inferences" in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently identified the cause of her fall. Holcomb, 521 F.3d at 137.

Defendant also argues that "when an accident is just as likely to be attributed to a factor other than the one alleged by a plaintiff, any determination of the cause of the accident is bound to be predicated on sheer speculation." Vega-Santana v. Nat'l R.R. Passenger Corp., 956 F. Supp. 2d 556, 561 (S.D.N.Y.) (quoting Wurtzel v. Starbucks Coffee Co., 257 F. Supp. 2d 520, 526-27 (E.D.N.Y. 2003)); see Deputron v. A & J Tours, Inc., 106 A.D.3d 944, 945 (2d Dep't 2013); Def. Mem. at 3. However, the only affirmative evidence that the wind may actually have caused Plaintiff to fall is contained in statements that Plaintiff denied making. It was a windy day, that is conceded, but there is an issue of fact as to whether Plaintiff actually told the EMT or the emergency medicine physician that the wind caused her to fall. Thus, this argument cannot sustain the motion for summary judgment. There is no other evidence to support the claim that

Plaintiff's fall was more likely caused by the wind rather than by a collision with an employee. Even if there were, however, the Court finds that Frank Cambria's affidavit would tip the scale in Plaintiff's favor. Frank Cambria's statement places several shopping carts, stacked and tied together as an employee would have done, see Def. Ex. I, in contact with Plaintiff's cart just after the accident. This evidence corroborates Plaintiff's explanation of the cause of her accident and supports her account of her fall. Plaintiff need not demonstrate proximate cause more strongly than this. See Wurtzel, 257 F. Supp. at 27 ("A plaintiff need only prove that it was 'more likely' or 'more reasonable' that the alleged injury was caused by the defendant's negligence than by some other agency.") (quoting Gayle v. City of New York, 703 N.E.2d 758 (1st Dep't 1998)) (internal citations omitted).

### 2. Defendant's Contentions Involve Questions Which Must be Resolved by the Jury

Defendant's motion rests in large part on its unsupported argument that Plaintiff's explanation of events "defies the laws of physics."[16] Def. Mem. at 5, ECF No. 32. Plaintiff's account of her and the employee's movements and locations immediately before her fall is not a picture of clarity, but a careful review of the evidence supports a reasonable understanding of the location of Plaintiff and the movements of the employee, and how the fall could have occurred. The issues that have been raised are appropriate for a jury to resolve. "[A]t the summary judgment stage[,] the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477

---

[16] Counsel conceded at oral argument that he was not relying on the testimony of an expert in physics for this argument.

U.S. at 249. Credibility determinations are exclusively within the province of the jury. See Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88-89 (1891); Jeffreys v. Rossi, 275 F. Supp. 2d 463, 476 (S.D.N.Y. 2003) ("It is axiomatic that courts should not assess credibility on summary judgment.").

The Court finds that Plaintiff's account of events is plausible, assuming all facts and reasonable inferences are taken in the light most favorable to Plaintiff, as they must be. Therefore, summary judgment must be denied.

### III. CONCLUSION

Accordingly, the Court finds that there remain issues of material fact with respect to the proximate cause of Plaintiff's fall. Based on the foregoing, Defendant's motion for summary judgment is **DENIED**. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 27.

Dated: December 17, 2019
White Plains, New York

**SO ORDERED,**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York